UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARNOLDO TRUJILLO, | 1:08-CV-00787 JMD HC |
| Petitioner, | ORDER REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT |
| MICHAEL MARTEL, Warden., | |
| Respondent. | ORDER DECLINING ISSUANCE OF CERTIFICATE OF APPEALABILITY |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the California Superior Court, County of Tulare. A jury convicted him of four counts of forcible lewd and lascivious acts upon a child under the age of fourteen years. On November 4, 2005, Petitioner was sentenced to thirty-two years in state prison. (Answer at 3).

Petitioner filed an appeal in the California Court of Appeal. The court affirmed the conviction with remand for re-sentencing. (Answer at 3; Lodged Doc. 6).

Petitioner filed a petition for review in the California Supreme Court. The court summarily denied review. (Answer at 3).

On June 6, 2008, Petitioner filed the instant petition. The petition raises the following six

grounds for relief: 1) Petitioner's equal protection rights were violated when the prosecutor exercised seven of her eleven peremptory challenges to exclude potential Hispanic jurors; 2) Petitioner's right to a fundamentally fair trial was violated when Detective White was allowed to give opinion testimony regarding another witness' veracity; 3) Petitioner's right to a fundamentally fair trial was violated when evidence that Petitioner's son may have molested the victim was excluded ; 4) Petitioner's right to a fundamentally fair trial was violated when evidence that Petitioner had tried to molest his daughter was admitted;  5) Petitioner's right to a fundamentally fair trial was violated when the jury was not instructed properly as to the propensity evidence; and 6) The trial court improperly denied Petitioner's oral new trial motion made at sentencing.

On November 05, 2008, Respondent filed an answer to the petition.

Petitioner did not file a traverse to the answer.

On June 16, 2008, Petitioner consented to jurisdiction by the magistrate judge. (Doc. 3).

On July 16, 2008 Respondent consented to the same. (Doc. 9).

One December 5, 2008, the case was reassigned to Magistrate Judge John M. Dixon. (Doc. 17).

## FACTUAL BACKGROUND[1]

A.R. was approximately seven years old when she, her mother, and her brother moved in with Trujillo and his family. Also living in the home were Arnold, Jr., R.T., Desariee, Alexis, Paul, Margie, Angel, and Rafael. The house had three bedrooms and two bathrooms. Trujillo, his wife Margie, and their newborn daughter Angel slept in one bedroom. Arnold, Jr., Paul, and Rafael slept in the second bedroom. A.R. and her mother, brother, and Alexis slept in the third bedroom. The house was rather small, and there were frequent arguments over little things. A.R. would become scared when Trujillo screamed, but he usually was nice to her.
    On one occasion A.R. was doing homework when Trujillo entered the room and pushed her onto the bed. He pulled down her clothing and started touching and licking her vagina. A.R. tried to pull away, but Trujillo would not let her go. A.R. did not scream or tell Trujillo to stop because she did not know what to do. A.R. told R.T. what occurred after Trujillo left.
    On another occasion, A.R. went into a bedroom for a blanket to use while she watched television. Trujillo followed her into the bedroom. He pushed her onto the bed, pulled down her clothes, and rubbed her vagina.
    On a third occasion, Trujillo came into A.R.'s bedroom while she slept, pulled her close to him, and then pulled down her clothes and rubbed and licked her vagina. Trujillo left the room but came back and repeated the same sequence of events three or four times.

---

[1] The facts are derived from the factual summary set forth by the California Court of Appeal in its opinion of July 31, 2007,and are presumed correct.  28 U.S.C. §§ 2254(d)(2), (e)(1); (Lodged Doc. 6 at 2-5).

Although Trujillo did not tell her she could not tell anyone what happened, A.R. was afraid that if she did so Trujillo would hurt her and the person she told. She would be in pain each time Trujillo molested her, and her mother took her to the doctor one time.

Gregg White is a detective with the Tulare County Sheriff's Department. White testified to various minor inconsistencies between A.R.'s testimony and a prior videotaped interview. We stress the trivial nature of the inconsistencies. Most were simply items that A.R. did not remember at trial that she had recalled during her interview-discrepancies that are attributable to the lapse of three years between the occurrence and the interview and the lapse of another 16 months between the interview and the trial.[2]

R.T. is Trujillo's daughter and was 16 at the time of trial. R.T. was interviewed by Tulare County Sheriff's Detective Genaro Pinon, but she testified that she was not truthful during the interview because she was mad at Trujillo. She was angry because he was not there when her mother died and because her brother Arnold, Jr., had "gone away" (died). R.T. told Pinon she saw Trujillo doing something to A.R. in the bedroom, but it was not true because she was playing on the other side of the house with her little brother. Trujillo told R.T. she should not help A.R. with her homework because they would end up playing, not doing homework.

R.T. told Pinon a different story. She told Pinon she became suspicious when Trujillo told her he would help A.R. with her homework because Trujillo did not read or write English. R.T. said that when she went outside to play with her brother, she stacked some tires and climbed on top of them to permit her to look through the window where she saw Trujillo pull down A.R.'s pants and rub her vagina. R.T. told Pinon that A.R. came outside after she was molested and told her what had occurred.

R.T. also told two aunts and two cousins that Trujillo molested A.R. She also told Pinon that Trujillo threatened to molest her one time, but he did not do so because she threatened to call the police if he tried to do so. R.T. testified this was a lie and that Trujillo would never attempt to molest her.

On cross-examination, R.T. explained that the home was a three-bedroom, two-bath mobile home with thin walls and a floor that made noise when you walked on it. In other words, there was very little privacy in this crowded home.

Pinon testified that he interviewed R.T. on January 24, 2004, while her aunt Betty was present. R.T. told Pinon that she asked Trujillo if she could go outside and play. Trujillo told her she could do so but she would have to take her brother with her, and A.R. would have to stay inside the house and finish her homework. Trujillo locked the door after he escorted R.T. and her brother outside. R.T. watched her father walk towards the bedroom in which A.R. was doing homework. She then stacked some tires so she could climb on top of them and look through the bedroom window. R.T. observed Trujillo place A.R. on his lap and move her from side to side. She then saw Trujillo take off his clothes and move forward and back while on top of A.R., who was crying. Trujillo also touched A.R. on her private parts. R.T. said she did not tell anyone because she did not know whom to tell.

R.T. told Pinon that on one occasion Trujillo tried to touch her, but he did not do so because R.T. threatened to call the police. R.T. also said she had used marijuana and mushrooms (presumably referring to psilocybin mushrooms) since she was eight years old.

C.R. and her family lived with Trujillo between January and July 2001. She moved into the Trujillo house because she needed somewhere to stay while she attended a new school. She never intended to stay at the house for an extended period of time. She left when her school plans changed. She got along well with the Trujillo family and left on good terms.

---

[2] The molestation occurred in the time period beginning on January 1, 2001, and ending on June 30, 2001. The interview occurred on February 9, 2004. A.R. testified on August 11 and 12, 2005.

>   While staying at the Trujillo house, C.R. noticed an unusual smell emanating from A.R.'s urine, but she did not seek medical assistance at the time.
>   C.R. received a phone call, apparently from a relative, informing her that something might have occurred while she and her family were staying in the Trujillo house. C.R. called A.R. and asked her if anything had occurred. A.R. began to cry and said that Trujillo had touched her between her legs.
>   Trujillo was charged with four counts of committing a lewd act on a child by use of force. (§ 288, subd. (b)(1).) Each count also included a special allegation that A.R. was under the age of 14 at the time of the molestations, and that there was substantial sexual conduct. (§ 1203.066, subd. (a)(8).) The jury found Trujillo guilty of each count and found each special allegation true. The trial court imposed an aggravated term of eight years on each count, to be served consecutively, for a total term of 32 years.

(Lodged Doc. 6 at 2-5).

## DISCUSSION

**I. Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the conviction challenged arises out of the Tulare County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d). Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

**II. Legal Standard of Review**

This Court may entertain a petition for writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state

1  court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

2  Petitioner has the burden of establishing that the decision of the state court is contrary to or
3  involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle,
4  94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states,
5  Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court
6  decision is objectively unreasonable. See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.
7  1999).

8  AEDPA requires that we give considerable deference to state court decisions. The state
9  court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's
10 interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*,
11 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

**III.  Review of Petitioner's Claims**

**A.     Ground One**

Petitioner argues that his equal protection rights were violated when the prosecutor exercised seven of her eleven peremptory challenges to exclude potential Hispanic jurors.

This claim was presented in an appeal to the California Court of Appeal, which affirmed the judgment in a reasoned opinion. (Lodged Doc. 6). The issue was then raised in a petition for review to the California Supreme Court, which summarily denied review. The California Supreme Court, by its "silent order" denying review, is presumed to have denied the claims presented for the same reasons stated in the opinion of the lower court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

In rejecting Petitioner's claim, the Court of Appeal found that the trial court did not abuse its discretion because it was reasonable to find that the prosecutor did not act with a discriminatory purpose.

Purposeful exclusion of jurors on account of race violates the Equal Protection Clause. Batson v. Kentucky, 476 U.S. 79, 84 (1986).

> In *Batson,* we outlined a three-step process for evaluating claims that a prosecutor has used peremptory challenges in a manner violating the Equal Protection Clause. . . . First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine

whether the defendant has carried his burden of proving purposeful discrimination. (citations omitted).

Hernandez v. New York, 500 U.S. 352, 358-59 (1991).

To establish a *prima facie* showing of discrimination, a defendant must show that the prosecution removed members of a cognizable group and that the circumstances raise an inference that the challenges were motivated by race. Fernandez v. Roe, 286 F.3d 1073, 1077 (9th Cir. 2002). "[A] court must consider the 'totality of the relevant facts' and 'all relevant circumstances' surrounding the peremptory strike. Thus, when a defendant raises a plausible *Batson* claim, a court must analyze the context in which the contested peremptory strike arose." Boyd v. Newland, 467 F.3d 1139, 1146-47 (9th Cir. 2006) (citations omitted).

Here, Petitioner challenges the prosecutor's peremptory challenge against Juror No. 285851. Prior to that challenge the prosecutor had been told to watch her step by the judge after she used five of her peremptory challenges to remove potential jurors with Hispanic surnames. Juror No. 285851 came up when the parties were choosing alternates. The prosecutor challenged the juror and, after Petitioner objected, the trial judge asked the prosecutor for an explanation. The Court of Appeal reasonably assumed that the trial judge thought that Petitioner made his *prima facie* case and that by questioning the prosecutor the judge had moved on to the second step of the *Batson* process. The prosecutor told the court that she thought that the juror did not have a good enough grasp of the English language to serve but the judge disagreed and suggested the juror was just nervous. Even though the judge did not agree with the prosecutor that the juror could not read English, he did not find that she acted with a discriminatory purpose and therefore did not grant Petitioner's motion.

Petitioner argues that because the trial court disagreed with the prosecutor's race-neutral reason for challenging the juror, Petitioner's motion should have automatically been granted, but a simple disagreement as to whether the juror could read English adequately is not tantamount to the trial court finding purposeful discrimination. As the Court of Appeal explained:

> the trial court's comment suggests that it viewed the proceedings differently than the prosecutor. This is nothing more than an example of two witnesses to the same event having different recollections of what occurred. It does not mean either is wrong, but demonstrates that every individual perceives things in a different manner.

(Lodged Doc. 6 at 8).

In the end, the trial court must take all of the evidence into consideration and determine if there was

U.S. District Court
E. D. California

7

purposeful discrimination. In this case, the trial court pointed out that there were seven jurors on the panel with Hispanic surnames and that the prosecutor used a peremptory challenge that resulted in a Caucasian juror being replaced with a Hispanic juror. (Lodged Doc. 6 at 9). In light of this evidence the Court of Appeal found that the trial court did not abuse its discretion in rejecting Petitioner's *Wheeler*[3] motion and this Court does not find the state court's application of *Batson* unreasonable.

## B.      Grounds Two, Three, Four, and Five

Petitioner contends that his constitutional right to a fundamentally fair trial was violated for the following four reasons: 1) Detective White gave opinion testimony as to A.R.'s truthfulness during her interview with him; 2) Petitioner's evidence that Petitioner's son may have raped A.R. was excluded; 3) the prosecutor presented propensity evidence that Petitioner had attempted to molest his daughter, R.T; and 4) the jury was given the wrong instructions with regard to the propensity evidence. Petitioner argues that each of these alleged errors separately denied him his right to a fundamentally fair trial.

Petitioner made these same constitutional allegations in his petitions to the California Court of Appeal and the California Supreme Court. The California Court of Appeal addressed each of these issues but did so using the California Evidence Code as a basis for its analysis and did not address the federal constitutional issue. Application of the standards set forth in AEDPA are significantly impeded where, as here, the state court supplies no reasoned decision. Delgado v. Lewis, 223 F.3d 976, 981 (9th Cir. 2000). Under such circumstances, the Court independently reviews the record to determine whether the state court clearly erred in its application of Supreme Court law. Id at 982 ("Federal habeas review is not de novo when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law."); *see also* Greene v. Lambert, 288 F.3d 1081, 1089 (9th Cir. 2002). That is, although the Court independently reviews the record, it still defers to the state court's ultimate decision. Because the appellate court ignored the federal constitutional issue raised by Petitioner, this Court will make an independent review of

---

[3] People v. Wheeler, 22 Cal.3d 258 (1978). *Wheeler* is the California equivalent of *Batson* in that they both set forth the standard in their respective courts for discrimination during jury selection. It is important to note however, that these standards are not the same.

the record to determine if each of the alleged errors stated above were egregious so as to deny Petitioner a fundamentally fair trial.

> "State prisoners are entitled to habeas relief under 28 U.S.C. § 2254 only if their detention violates the Constitution or a federal statute or treaty. [Citation omitted]. A state court's procedural or evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process." [Citations omitted].

Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995).

A prisoner has been denied due process when "the admission of the evidence so fatally infected the proceedings as to render them fundamentally unfair." Jammal v. Van De Kamp, 926 F.2d 918, 919 (9th Cir. 1991). The question before us now is not whether each of the actions complained of was right or wrong but whether they each individually so fatally infected the trial as to render it fundamentally unfair.

*Detective White's Testimony*

Detective White was the officer who interviewed A.R. when she first accused Petitioner of molesting her. He was called at trial to testify about what A.R. said in that interview. After Detective White recounted the interview the prosecutor asked him, "from your training and experience, did it appear to you that [A.R.] was making it up as she went?" (Answer at 11). The defense objected but the trial judge allowed the detective to answer in the affirmative. On appeal the appellate court conducted a reasoned analysis using the California Evidence Code and concluded that, even though the court erred in allowing Detective White to give his opinion as to A.R.'s truthfulness, the error was harmless under the California standard.

This Court will not question the appellate court's analysis that the trial court committed harmless error under the California Constitution; however, we will ask whether Detective White's testimony so fatally infected the proceedings so as to render the trial fundamentally unfair. Petitioner relies on two cases from the Eighth and Eleventh Circuits to support his argument that this single piece of testimony could result in a fundamentally unfair trial.[4] Petitioner's reliance on these cases is misguided for two reasons. First, neither is binding on this court, and secondly, neither is on point

---

[4] Maurer v. Department of Corrections, 32 F.3d 1286 (8th Cir. 1994); Snowden v. Singletary, 135 F.3d 732 (11th Cir. 1998).

with the facts of this case.  The decisions in both *Maurer* and *Snowden* turn on the prosecution's egregious use of the improper opinion testimony, not the testimony itself,[5] where as in this case Petitioner complains that the mere fact that Detective White was allowed to give his opinion rendered the trial fundamentally unfair.  Petitioner's analogy to these cases is both erroneous and unpersuasive.

Review of all of the facts show that there was plenty of other evidence on which the jury could rely to find Petitioner guilty other than Detective White's opinion testimony.  The Court initially notes that A.R. testified at trial, giving the jury an opportunity to decided her credibility for themselves. Also, R.T. testified at trial that A.R. had told her that Petitioner had molester her. (Lodged Doc. 6 at 18).   R.T.'s statement to Officer Pinon that she had actually seen A.R. molested supported A.R.'s claim as well, and even though R.T. claimed at trial that most of that statement was false, the appellate court points out that the "details in her statement were far more suggestive of the truth than a young girl angry at her father," (Lodged Doc. 6 at 12) and it would be reasonable for a jury to find her original statement credible.  Furthermore, Trujillo's entire defense rested on his assertion that A.R. was lying but he never presented a viable reason to support that other than at the time, 3 years prior to her coming forward, A.R. had been mad at him.  Lastly, and perhaps most importantly, Petitioner makes no claim nor points to any evidence that, had Detective White not been allowed to testify as to his opinion of A.R.'s veracity, the jury would have found him not guilty. Detective White's opinion testimony was but one piece of evidence on which the jury could have relied to find Petitioner guilty and there is no evidence that it fatally infected the rest of the proceedings; therefore, its admission did not deny Petitioner a fundamentally fair trial.

*Evidence of Prior Molestation*

Petitioner sought to introduce evidence that his son, Arnold Jr., had molested A.R. and that Arnold Jr. committed suicide after being confronted with those accusations.  Petitioner argued this evidence helped establish that A.R. could testify about the lurid acts because she had been exposed

---

[5] See Snowden, 135 F.3d at 738-39 (where the court found a denial of fundamental fairness where "the prosecutor emphasized the expert's testimony regarding credibility, rather than touching on it briefly").  *See also* Maurer, 32 F.3d at 1290 (where the court's analysis turned on "the closeness of the case, the state of the evidence and the manner in which the improper 'vouching' testimony was repeatedly solicited and reemphasized in the closing argument").

to them by Arnold Jr. as opposed to Petitioner.  The prosecution objected to the evidence as irrelevant.  (Lodged Doc. 6 at 12-13).  The trial court accepted as true that A.R. had been molested by Arnold Jr. in a substantially similar manner to that alleged against Petitioner but chose to exclude the evidence finding that its probative value was substantially outweighed by the potential of undue prejudice. (Lodged Doc. 6 at 13).  The appellate court found that the trial court did not abuse its discretion in excluding the evidence but, once again, failed to consider Petitioner's constitutional claim that the exclusion denied him a fundamentally fair trial.

Petitioner complains that the trial judge dismissed the evidence as irrelevant, which is not actually the case, the trial judge simply found that any probative value the evidence might have towards showing that A.R. may have been molested by someone else was substantially outweighed by the possible prejudice and confusion such evidence would cause the jury.  The appellate court found that the trial court was within its discretion to make this determination under California Evidence Code § 352 and this Court sees no reason why exercising this discretion denied Petitioner a fundamentally fair trial.  Firstly, as the trial court pointed out, just because A.R. might have been molested by Petitioner's son does not mean that she was not also molested by Petitioner. (Pet. Mem. P.&A. at 20).  Also, the trial court discussed that any conclusions drawn by the parties or the jury as to why Arnold Jr. committed suicide would be purely speculative and would only serve to confuse and inflame the jury while not actually proving anything. (Id. at 20-21).  The appellate court further considered the possibility that the evidence of a little girl being molested by so many people could anger the jury to the point of blaming Petitioner for his son's actions. (Lodged Doc. 6 at 15).  Taking into consideration the already incendiary nature of this case, the court's act of excluding this type of speculative and possibly prejudicial evidence does not rise to the level of a constitutional violation.

*Propensity Evidence and Jury Instructions*

The prosecutor sought to introduce evidence that Petitioner had tried to molest his daughter, R.T., to show that he had a propensity towards sexual deviancy.  In her statement to Officer Pinon, R.T. said that Petitioner had threatened to molest her on one occasion but that she had staved him off by threatening to call the police.  The trial court allowed the evidence over Petitioner's objections.  On appeal, Petitioner claimed that the evidence should not have been admitted because of its

untimely disclosure and because the alleged act was not sufficient to be deemed an attempt.  The appellate court conducted a reasoned analysis pursuant to California law for both issues and concluded that the trial court did not commit error by allowing the prosecution to present the evidence. (Lodged Doc. 6 at 17-19).

Petitioner also complains of the jury instructions given regarding the propensity evidence for two reasons.  First, the jury was not instructed on the elements of attempt, and secondly, the jury was not instructed that the propensity evidence could only constitute an attempt as opposed to a complete crime.  Again, the appellate court found no error.  It noted that even if the jury had been instructed correctly and then found that the evidence was not sufficient to prove even an attempt, the only effect on the outcome of the case would be that the jury could not infer that Petitioner had a propensity towards committing sexual offenses-it would not prove that Petitioner did not in fact molest A.R.

As stated above, the evidence on which the jury could have relied to convict Petitioner was overwhelming, even if the propensity evidence had never been introduced.  Furthermore, Petitioner did not point to any evidence to show that the jury might have found the propensity evidence more probative than A.R.'s testimony or Detective White's testimony or R.T.'s admission that A.R. told her she had been molested.  Therefore, because there is no evidence that any possible errors with the propensity evidence infected the entire proceedings, the Court rejects Petitioner's contention that he was denied a fundamentally fair trial.

### C.      **Ground Six**

During deliberations Juror No. 285172 became unavailable due to a family funeral.  The trial court informed both parties that the alternate jurors would be contacted.  After the first alternate, Juror No. 382117,  was also found to be unavailable, the second alternate, Juror No. 315301,  was seated on the jury.  No objections were made at the time and the jury resumed deliberations.  After the jury returned with a guilty verdict, Petitioner moved for a new trial based on the seating of the second alternate, as opposed to the first, without oral argument; which the trial court denied. (Lodged Doc. 6 at 20-21).  The appellate court affirmed the actions of the trial court because they found that Petitioner waived the issue by not objecting to the procedure utilized by the trial court at the time the court was replacing the juror. (Id. at 23-24).  Petitioner now claims that "the trial court's wrongful

refusal to permit the defense's oral new trial motion requires habeas corpus relief." (Pet. Mem. P. & A. at 36).

As stated above, it is not the place of this Court to decide whether California state law has been applied properly and we are limited to determining if the state court acted contrary to clearly established federal law. Petitioner does not claim that any federal law has been violated with regard to this ground, he merely claims that the trial court should not have denied the motion for a new trial and then demands habeas relief. Not only does Petitioner fail to allege a federal right that has been violated, he also fails to cite to a single federal case-his entire argument is based on California case law. Because Petitioner fails to raise a cognizable federal claim the Court dismisses ground six.

**IV. Certificate of Appealability**

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 123 S.Ct. 1029, 1039 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253.

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or

that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 123 S.Ct. at 1034; Slack v. McDaniel, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 123 S.Ct. at 1040.

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Petitioner has not made the required substantial showing of the denial of a constitutional right. Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. The Petition for Writ of Habeas Corpus is DENIED with prejudice;

2. The Clerk of Court is DIRECTED to enter judgment; and

3. The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

**Dated:    February 2, 2009               /s/ John M. Dixon**
                                           UNITED STATES MAGISTRATE JUDGE

U.S. District Court
E. D. California

14